**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| Outdoor One Communications LLC, | Case No. |
| Plaintiff, | Hon. |
| v. | **COMPLAINT** |
| City of Grandville, | |
| Defendant. | |

Donald R. Sheff II (P78262)
OUTDOOR ONE COMMUNICATIONS LLC
Attorney for Plaintiff
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
248-289-5895
dsheff@primesitellc.com

1

## COMPLAINT

Outdoor One Communications LLC ("OOC") complains against defendant City of Grandville ("Grandville" or the "City") as follows:

## PARTIES

1. OOC is a Michigan limited liability company with its principal place of business located in the City of Novi, County of Oakland, and State of Michigan.

2. Grandville is a Michigan municipal corporation located in Kent County, Michigan.

## JURISDICTION AND VENUE

3. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. § 1983.

4. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because OOC asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

5. The Court has jurisdiction over this action under 28 U.S.C. § 1343(a) (3) and (4) because OOC seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 2201 and 2202 to declare OOC's rights and grant all further relief found necessary and proper.

7. Venue is proper in the Court under 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides and OOC's claims arose in this judicial district.

## **COMMON ALLEGATIONS**

### The City's Sign Ordinance

8. Grandville regulates the display of signs through Article 17 of The Zoning Ordinance of 2010 ("Sign Ordinance"). The Sign Ordinance, in its entirety, is attached to this Complaint as **Exhibit 1** and is incorporated herein.

9. "All signs that are not expressly authorized by [the Sign Ordinance] are prohibited." Sign Ordinance, Section 17.2.C.

10. Section 17.1 of the Sign Ordinance sets forth the City's "[i]ntent and purpose" of its sign regulations:

> This article controls identity and information signs related to all land uses, encourages the effective use of signs as a means of communication, improves pedestrian and traffic safety, and maintains and enhances aesthetics in a manner that is consistent with public health, safety, and welfare.

Section 17.1.

11. Grandville's Sign Ordinance contains a permitting process, applicable to only some categories of signs. *See* Section 17.11.

12. However, certain categories of signs are exempted from the permitting requirement altogether based upon the content of the sign's message. Section 17.4.

13. Further, the Sign Ordinance facially makes other distinctions in its regulation of signs based on their content which does not survive strict or intermediate scrutiny.

14. These distinctions include, among other categories of signs, the following:

    a. "Off-premise [sic] Sign" which is defined as "[a] sign that contains a message unrelated to a business or profession conducted or unrelated to a commodity, service, or activity sold or offered upon the premises where such sign is located. A Billboard is a type of off-premises sign." Section 17.3.

 b. "On-premise [sic] Sign" which is defined as "[a] sign pertaining solely to the use of the property on which it is located, such as to an establishment, product, merchandise, good, service, or entertainment which is located, sold, offered, produced, manufactured, or furnished at the property on which the sign is located." Section 17.3.

 c. "Political sign" which is defined as "[a] temporary sign containing a political or social (noncommercial) message." Section 17.3.

 d. "Ball field sign" which is defined as "[a] sign located at a public or private ball field." Section 17.3.

 e. "Public art and murals" which is defined as "[a]rtwork, statuary and murals meant for viewing by the public that do not contain any advertising." Section 17.4.

 f. "Historical Marker" which is defined as "signs describing a property's designation as a historical site or structure and containing narrative, not exceeding 12 square feet in area." Section 17.4.

15. Signs displayed in Grandville, including those identified in the preceding paragraph 14, are regulated differently, based on their content or the identity of the speaker.

16. Grandville favors certain content of speech over other content by excluding favored speech from some or all regulation under the Sign Ordinance.

17. Such favored speakers are exempt from regulation, their messages can be placed without a permit, and, in certain instances, are exempt from other zoning requirements.

4

18. The Sign Ordinance incorporates a distinction between on-premises and off-premises signs where the applicability of certain regulations depend upon whether a sign's content proximately relates to the premises upon which the sign is displayed. Section 17.3.[1]

19. Whether a sign is considered "off-premise[s]" depends upon the content of the message the sign displays.

20. Grandville regulates the placement, size, height, and other features of signs based on whether or not they contain a message "unrelated to a commodity, service, or activity sold or offered upon the premises where such sign is located." Sections 17.3.; 17.7.E.

21. Article 18 of The Zoning Ordinance of 2010 is attached as **Exhibit 2** and is incorporated herein.

22. Under Article 18, the Zoning Board of Appeals ("ZBA") may grant variances from provisions of the Sign Ordinance. Section 18.4.

23. "In granting a variance the ZBA may attach thereto such conditions regarding the location, character, and other features of the proposed uses *as it may deem reasonable* in furtherance of the purpose of this ordinance." Section 18.4.A.3. (emphasis added).

24. To qualify for a dimensional variance, an applicant "must prove" that the conditions identified under the headings of "Extraordinary Circumstances," "Substantial Justice," "Impact on Surrounding Neighborhood," "Public Safety and Welfare," and "Not Self Created" have been met. Section 18.4.F.2.

25. To qualify for a use variance, an applicant must "show[] . . . an unnecessary hardship in the official record of the [ZBA] hearing" and "must prove" that the conditions under

---

[1] The Sign Ordinance uses the grammatically incorrect phrases "off-premise" and "on-premise" when referring to these categories of signs.

5

the headings of "Hardship," "Unique Circumstances," "Character of Neighborhood," "Capacity of Roads," and "Not Self Created" have been met. Section 18.4.G.5.

26. The ZBA retains discretion to deny a request for a dimensional or use variance, regardless if the applicant has met the appropriate requisite conditions as set forth for each type in Article 18. *See* Sections 18.4.F.2. and 18.4.G.5.

### Grandville Denied OOC's Sign Permit Application

27. OOC is engaged in the business of erecting and maintaining outdoor advertising displays, commonly known as billboards, on property it owns or leases for that purpose. OOC earns income by charging advertisers to display their messages on the billboards.

28. OOC billboards permit the display of noncommercial and truthful commercial messages. For example, the messages on OOC billboards are permitted to involve political issues, paid and unpaid religious messages and unpaid memorial tributes.

29. Digital billboards, like the one OOC proposes to erect in Grandville, incorporate unique technology that allow Amber Alerts, real-time weather warnings, and other time-sensitive emergency messages to be communicated to the public instantly.

30. Billboard advertising is a form of speech protected under the First Amendment to the U.S. Constitution. In *Metromedia, Inc. v. City of San Diego*, the Supreme Court explained that "[t]he outdoor sign or symbol is a venerable medium for expressing political, social and commercial ideas. From the poster or 'broadside' to the billboard, outdoor signs have placed a prominent role throughout American history, rallying support for political and social causes." 453 U.S. 490, 501 (1981) (cleaned up).

31. OOC and third-parties enjoy the right under the First and Fourteenth Amendments to the U.S. Constitution to convey messages to others through the use of billboards, including,

but not limited to ideological speech, religious speech, political speech, other forms of noncommercial speech and truthful commercial messages.

32. On May 6, 2020, in accordance with the Sign Ordinance and instructions contained on Grandville's public website, OOC submitted a sign permit application to Grandville through its designated agent to accept such applications, Professional Code Inspections of Michigan Inc. ("PCI"), in order to obtain a sign permit to erect a billboard in Grandville at a parcel of real property adjacent to I-196 commonly known as 4785 Canal Ave. SW, Grandville, MI 49418 ("Site") with permission of the property owner. **Exhibits 3 and 4**.

33. The Sign Ordinance requires Grandville "[w]ithin ten days of receiving a complete application" to "[i]ssue . . . or [r]eject the sign permit." Section 17.12.E.

34. The Site is Zoned C-5 that permits the erection of signs as regulated by the Sign Ordinance.

35. OOC satisfies all requirements for approval from the Michigan Department of Transportation under Michigan's Highway Advertising Act, M.C.L. § 252.301, et seq., for the erection of a billboard on the Site.

36. On the morning of May 26, 2020, Chuck Dyk, on behalf of PCI forwarded OOC's sign permit application to Granville Assistant City Manager Matthew Butts. **Exhibit 3**.

37. On the afternoon of May 26, 2020, Assistance City Manager Butts informed OOC via email that:

> Chuck Dyk at PCI forwarded me your sign permit application. Upon review, the proposed sign does not meet the Zoning Ordinance. More specifically, Section 17.7.E.4.d requires that **off-premise signs [billboards]** shall be located at least 500 feet from a residential zoning district or an existing residence. The properties directly to the north and south are zoned single family residential. The width of the lot at the I-196 right-of-way is only 254.4' wide. As such, the 500' separation requirement cannot be met. In 2013 CBS Outdoor applied for a variance for section 17.7 to construct a billboard at the same location. The variance request

7

was denied by the Zoning Board of Appeal. Please let me know if you have any questions.

**Exhibit 3** (emphasis added).

38. The Sign Ordinance unconstitutionally restricts OOC's ability to erect and use its billboards and, therefore, violates OOC's right to free speech protected by the United States Constitution.

39. Grandville acted under color of state law when it enacted and enforced the Sign Ordinance.

40. Grandville acted under color of state law when it prohibited OOC from erecting and maintaining its billboard at the Site.

41. The Sign Ordinance is facially unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution.

42. The enforcement of the Sign Ordinance has and will continue to cause OOC harm, including irreparable harm, by depriving OOC of its constitutional rights under the First and Fourteenth Amendments.

43. It is believed and therefore alleged that the Township engaged in a course of conduct designed and intended to violate the constitutional and civil rights of OOC, as well as other persons seeking to erect billboards within the Township, and that punitive damages should be awarded.

44. OOC has suffered and will continue to suffer harm and damages because of the Sign Ordinance, including the actual and threatened enforcement thereof, and its inability to erect and use its proposed billboard at the Site.

## COUNT I
## 42 U.S.C. § 1983
## DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW — <u>UNCONSTITUTIONAL CONTENT-BASED RESTRICTIONS</u>

45. OOC incorporates by reference paragraphs 1-44 above.

46. Grandville has enacted and enforced the Sign Ordinance under color of state law.

47. Restrictions on speech that are content-based are subject to strict scrutiny.

48. Strict scrutiny requires that content-based speech restrictions be narrowly tailored to achieve a compelling government interest.

49. The Sign Ordinance is content-based because it distinguishes signs on the basis of the message displayed.

50. The Sign Ordinance is content-based because it regulates signs on the basis of the identity of the speaker.

51. The Sign Ordinance is content-based because it regulates signs on the basis of the activity conducted on the premises where the speaker seeks to display the sign.

52. For example, with respect to signs displaying an "off-premise[s]" message in a commercial zoning district:

   a. "A two sided off-premise sign that is visible from I-196 shall not be allowed." Section 17.7.E.3.a. However, a freestanding sign displaying an "on-premise[s]" message may have two sides, despite being visible from I-196.

   b. "An off-premise sign shall be located at least 1,000 feet from another off-premise sign that faces the same direction of traffic on either side of an interstate highway." Section 17.7.E.4.e. "An off-premise sign shall be located at least 500 feet from all other freestanding signs that are located on the same side and visible from the traveled portion of an interstate highway."

9

        17.7.E.4.f. However, freestanding signs displaying on-premises messages are not subject to spacing restrictions based on their distance from other signs.

    c. "An off-premise sign shall be located at least 500 feet from a residential zoning district or an existing residence." Section 17.7.E.4.d. However, freestanding signs containing on-premises messages are not subject to a residential setback restriction.

    d. "An off-premise electronic message sign may only be constructed to replace an existing off-premise sign." Section 17.7.E.6.f. However, an electronic message sign displaying an on-premises message may be constructed without having replaced an existing sign.

53. The Sign Ordinance also discriminates based a speaker's past speech.

54. For example, a speaker may construct an "off-premise[s] electronic message sign" to display his or her messages only if he or she "replace[s] an existing off-premise[s] sign." Section 17.7.E.6.f. However, if the prospective speaker does not own or control an existing off-premises sign, insofar that he or she could cause it to be removed, the prospective speaker would be unable to construct an electronic message sign to display his or her messages.

55. The Sign Ordinance's regulatory treatment of signs based upon whether they display on-premises or off-premises content is unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution. *See Thomas v. Bright*, 937 F.3d 721, 729, 738 (6th Cir. 2019).

56. "By favoring on-premises-related speech over speech on but unrelated to the premises" the Sign Ordinance "has the effect of disadvantaging the category of non-commercial

speech that is probably the most highly protected: the expression of ideas." *Thomas v. Bright*, 937 F.3d 721, 736 (6th Cir. 2019) (citation and quotations omitted).

57. The Sign Ordinance's regulatory distinctions based upon the identity of the speaker are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because they are not narrowly tailored to achieve a compelling government interest.

58. The Sign Ordinance's regulatory distinctions based upon a speaker's past speech are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because they are not narrowly tailored to achieve a compelling government interest.

59. The Sign Ordinance's regulatory distinctions based on sign content are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because they are not narrowly tailored to achieve a compelling government interest.

60. The Sign Ordinance is unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because it favors commercial speech over noncommercial speech.

61. The Sign Ordinance is unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because it favors certain noncommercial messages over others.

62. The Sign Ordinance is unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because it does not identify a compelling government interest in regulating the content of signs or the identity of the speaker.

63. OOC has suffered and will continue to suffer financial and other harm because of its inability to erect and use its proposed billboard.

WHEREFORE, Plaintiff OOC prays for judgment against Grandville granting OOC injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees and other fees authorized by 42 U.S.C. § 1988, plus costs and interest, along with any other further relief the Court may deem just, proper, and equitable.

**COUNT II
42 U.S.C. § 1983
VIOLATION OF OOC's FIRST AND
FOURTEENTH AMENDMENT RIGHTS
<u>FREE SPEECH</u>**

64. OOC incorporates by reference paragraphs 1-63 above.

65. To satisfy the First and Fourteenth Amendment, any attempt by Grandville to regulate or restrict OOC's display of its signs must directly advance a sufficient government interest and be narrowly tailored to reach no further than necessary to achieve that interest.

66. Content-neutral regulations of speech must be narrowly tailored and must not burden more speech than necessary to achieve a substantial governmental interest.

67. The Sign Ordinance constitutes an unconstitutional regulation of speech because it prohibits far more speech than necessary to advance the City's stated interests in the regulation of speech.

68. The Sign Ordinance constitutes an unconstitutional regulation of speech because it exempts certain types of signs from some or all regulation based upon the content of the message displayed or the identity of the speaker.

69. For example, "off-premise[s]" signs are subject to size, height, illumination, and other restrictions that regulate its display. However, favored speech or speakers, such as signs displayed at "ball field[s]" located on *City property* are exempted from any regulation on their size, height, or illumination. *See* Section 17.7.B.

70. As a result, for example, a 700 square foot sign advertising an off-premises commercial product may be displayed at a "ball field" – so long as the ball field is on the City's property. *See* Section 17.7.B. However, if the same sign was placed at a private ball field located on *private property*, it would be prohibited as an illegal "off-premise[s]" sign.

71. Similarly, "off-premise[s]" signs are subject to regulation under Section 17.7.E., while "[a]rtwork . . . meant for viewing by the public that do not contain any advertising" are exempt from any permit, size, height, or illumination regulations. *See* Section 17.4.

72. "Artwork" or "advertising" are not defined by the Sign Ordinance.

73. Further, if a sign is "used to identify a regional shopping center" it may display up to three freestanding signs, 300 square feet each, with no required setback from a residence or residential zoning district. *See* Section 17.10.B.2.

74. However, "[a]n off-premise[s] sign shall be located at least 500 feet from a residential zoning district or an existing residence." Section 17.7.E.4.d.

75. The Sign Ordinance is not narrowly tailored to directly advance a substantial government interest and constitutes an unconstitutional regulation of free speech.

76. The Sign Ordinance's purported interests in traffic safety and aesthetics are not promoted by exempting off-premises content from regulation at certain publically-owned establishments, but prohibiting such content elsewhere.

77. The Sign Ordinance's purported interests in traffic safety and aesthetics are not promoted by exempting certain off-premises content such as "[a]rtwork . . . . . . meant for viewing by the public that do not contain any advertising" from regulatory restrictions, that are otherwise applicable to other vital forms of noncommercial speech, such as political, religious, or patriotic speech.

78. The Sign Ordinance's purported interest in traffic safety and aesthetics are not promoted by the City Administrator arbitrarily deciding what is "artwork" or an "advertisement" for purposes of exempting certain content from the Sign Ordinance's otherwise applicable off-premises speech regulations.

79. The Sign Ordinance's purported interests in traffic safety and aesthetics are not promoted by exempting signs "used to identify a regional shopping center" from residential setback restrictions that are otherwise applicable to "off-premise[s]" signs. *Compare* Section 17.7.E., *with* Section 17.10.B.2.

80. The Sign Ordinance's disparate regulation of signs based on their message or the speaker does not directly advance a substantial government interest.

81. The Sign Ordinance is unconstitutional because it regulates signs based on the presence and character of the activity conducted on the premises where the speaker seeks to display the sign.

82. The Sign Ordinance is unconstitutional because subjecting signs displaying ideological, political, religious, and other off-premises speech to regulatory restrictions that are not applied to signs displaying favored commercial and other noncommercial speech does not directly advance a substantial government interest.

83. OOC has suffered and will continue to suffer financial and other harm because of its inability to erect and use its proposed billboard.

WHEREFORE, Plaintiff OOC prays for judgment against Grandville granting OOC injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees and other fees authorized by 42 U.S.C. § 1988, plus costs and interest, along with any other further relief the Court may deem just, proper, and equitable.

### COUNT III
### 42 U.S.C. § 1983
### DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW — <u>UNCONSTITUTIONAL PRIOR RESTRAINT</u>

84. OOC incorporates by reference paragraphs 1-83 above.

85. The requirement of government approval, by way of a license, permit, or otherwise, before engaging in expression is a prior restraint that is presumed to be unconstitutional unless certain safeguards are met, including, but not limited to, definite and objective standards to guide the decision to issue a permit.

86. The Sign Ordinance's content-based scheme of sign regulation necessarily requires the City to evaluate the content of proposed signs, how a sign's content could be interpreted by the public, and whether a message sufficiently relates to the premises upon which the sign is placed in order to determine whether to apply differing degrees of regulation.

87. The content-based sign regulations that make up the Sign Ordinance provide unchecked and unbridled discretion to the City Administrator in deciding whether to approve or deny a sign permit application and, therefore, constitute an unconstitutional prior restraint of speech.

88. Grandville's sign regulatory scheme constitutes an unconstitutional prior restraint of speech because the Zoning Board of Appeals possesses unbridled discretion to modify or exempt speakers from any sign regulation and/or impose arbitrary conditions upon variance applicants.

89. Grandville's sign regulatory scheme constitutes an unconstitutional prior restraint of speech because the Zoning Board of Appeals possesses unbridled discretion to deny a speaker a variance from its sign regulations.

90. Grandville violated its Sign Ordinance and thereby imposed in an unconstitutional prior restraint on OOC's speech by refusing to provide OOC a prompt decision in response to its sign permit application of May 6, 2020.

91. The Sign Ordinance lacks the procedural safeguards that the First and Fourteenth Amendment require in any scheme that imposes a license or permit requirement on expression.

92. OOC has suffered and will continue to suffer financial and other harm because of its inability to erect and use its proposed billboard.

WHEREFORE, Plaintiff OOC prays for judgment against Grandville granting OOC injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees and other fees authorized by 42 U.S.C. § 1988, plus costs and interest, along with any other further relief the Court may deem just, proper, and equitable.

Respectfully submitted,

By: /s/Donald R. Sheff II
    Donald R. Sheff II (P78262)
General Counsel
Outdoor One Communications LLC
Attorney for Plaintiff
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
248-289-5895
dsheff@primesitellc.com

Date: June 22, 2020